UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA GARCIA,<br>　　Plaintiff,<br>　　v.<br>CAROLYN W. COLVIN, Commissioner of Social Security Administration,<br>　　Defendant. | Case No. CV-12-5513 JST<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 19, 22 |

In this Social Security action, Plaintiff Alicia Garcia ("Plaintiff") appeals a final decision by Defendant Commissioner Carolyn W. Colvin ("Defendant") denying Plaintiff's application for disability insurance benefits and supplemental security income. Before the court are the parties' cross-motions for summary judgment. The matter is deemed fully briefed and submitted without oral argument pursuant to Civil Local Rule 16-5. Upon consideration on the moving papers, and for the reasons set for below, Plaintiff's motion for summary judgment is DENIED and Defendant's motion for summary judgment is GRANTED.

I. **BACKGROUND**

　A. **Procedural and Factual History**

Alicia Garcia claims disability since September 13, 2006 caused or partially caused by a motor vehicle accident in 2006. The accident caused her back and head injuries, shoulder pain, loss of the sense of taste or smell, and fainting spells. Administrative Record ("AR") 254. She has also been diagnosed with liver and kidney problems, as well as hepatitis C. AR 555.

Garcia's prior work experience includes work as a credit analyst, work as an accounting manager, and work as a credit manager. AR 22-23. She was employed at Google until December 2006 when she was laid off from her job as a credit analyst. Garcia testified that she would have

kept working if she had not been laid off. AR 37-38. She has not engaged in substantial gainful activity since being laid off. AR 20.

Plaintiff applied for disability insurance benefits under Title II and for supplemental security income under Title XVI of the Social Security Act. To qualify for either program, claimants must be disabled within the meaning of the Social Security Act.

The Social Security Act provides benefits to individuals who are "under a disability." 42 U.S.C. § 423(a)(1). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any . . . physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The individual's impairment must be "of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . .." 42 U.S.C. § 423(d)(2)(A).

An Administrative Law Judge ("ALJ") evaluated both claims concurrently and found that Plaintiff had not been disabled at any time from the alleged onset date of September 13, 2006 through April 25, 2011. AR 27.

Plaintiff's claim was denied initially and upon reconsideration by the Social Security Administration. AR 15-31, 113, 119. She filed a request for hearing before an ALJ. In a decision dated April 25, 2011, the ALJ found Plaintiff was not disabled under the Social Security Act. AR 18. The ALJ evaluated Plaintiff's claim using the five-step sequential evaluation process for disability required under the Code of Federal Regulations:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the

> ALJ proceeds to step five and examines whether the claimant has the residual functional capacity ("RFC") to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); see 20 C.F.R. §§ 404.1520, 416.920 (2012).

At step one, the ALJ found Garcia had not engaged in substantial gainful activity since September 13, 2006. AR 20. At step two, he found Garcia had the following severe impairments: degenerative joint disease of the left shoulder, bilateral foot drop secondary to compartment syndrome, left foot arthritis, levoscoliosis and osteoarthritis of the lumbar spine, hepatitis C, arthritis of the right knee, stage 3 chronic kidney disease, chronic pain syndrome, and diabetes mellitus. AR 20. He also found that Garcia's neck pain, headaches, and fainting episodes were non-severe impairments. AR 20-21.

At step two, the ALJ found that Garcia's depression was not a severe impairment and instead was a mild limitation. AR 20-21. The ALJ evaluated Garcia's mental impairments using section 12.00C of the Listings of Impairments Review Technique. See 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found she had mild restriction of activities of daily living, no difficulties in social functioning, mild limitations in maintaining concentration, persistence or pace, and no episodes of decompensation for an extended duration. AR 21.

At step three, the ALJ concluded that Plaintiff did not have an impairment listed in or medically equal to one listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 22. At step four, the ALJ found Garcia had the residual functional capacity ("RFC") to perform light work if she were afforded the opportunity to alternate between sitting and standing as needed. AR 22. He also found Garcia's allegations regarding the intensity, persistence, and limiting effects of her symptoms to be not credible to the extent the claims were inconsistent with her RFC and that Garcia herself was not entirely credible. AR 23-25. Following this analysis, the ALJ found that Garcia was capable of performing her past relevant work and therefore was not disabled under the Social Security Act. AR 25.

Although the ALJ found that Garcia was not disabled at step four, he nonetheless engaged in an alternative analysis of whether Garcia could perform other work existing in significant

numbers in the national economy.  In the alternative step five analysis, the ALJ referred to the opinion of Vocational Expert ("VE") Diana Wong, who testified at the hearing.  AR 25-26.  Based on Wong's testimony, the ALJ found Garcia capable of performing other jobs such as a parking lot attendant or assembler.  AR 26-27.

The Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner.  Plaintiff now seeks judicial review of that decision.

### B.     Jurisdiction and Legal Standard

This court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g).  The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards."  Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted).  "Substantial evidence" means more than a scintilla, but less than a preponderance, of evidence which a reasonable person might accept as adequate to support a conclusion.  Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  When determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).  Where evidence exists to support more than one rational interpretation, the court must defer to the decision of the Commissioner.  See Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin, 966 F.2d at 1258.  Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  Additionally, the 'harmless error' rule applies where substantial evidence otherwise supports the ALJ's decision.  Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990).  Pursuant to Civil Local Rule 16-5, Plaintiff has filed a motion, and Defendant a cross-motion, for summary judgment, both of which the Court now considers.  ECF Nos. 19 & 22.

## II.    ANALYSIS

Plaintiff alleges that the ALJ's decision was based on errors of law and of fact and is not supported by substantial evidence.  Plaintiff argues: (1) the ALJ failed to grant appropriate weight to medical opinions, (2) the ALJ erred in not finding Garcia's depression to be a severe

4

1   impairment, (3) the ALJ's determination that Garcia could perform her past relevant work was
2   based on legal error, (4) the ALJ's alternative step five finding is legally insufficient, and (5) the
3   ALJ erred in weighing third party testimony.  Plaintiff requests a reversal of the ALJ's April 2011
4   decision and the immediate payment of benefits, or, in the alternative, remand for further
5   administrative proceedings.  Defendant asserts the ALJ's decision was supported by substantial
6   evidence and is free of legal error.

   **A.   Whether the ALJ's Analysis of Medical Opinions Was Supported by Substantial Evidence**

   In determining Garcia's RFC, the ALJ cited five medical opinions:  treating source opinions by Dr. Wolfe, Dr. Spangler, and Dr. Imperial, an examining opinion by Dr. Hotti, and a nonexamining "State agency physical consultative assessment" by Dr. VanCompernolle.  AR 24-25.  Plaintiff argues that the ALJ improperly gave the most probative weight to Dr. VanCompernolle's opinion instead of Dr. Spangler and Dr. Imperial's opinions.

   "Cases in [the Ninth Circuit] distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)."  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  The ALJ should give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  20 C.F.R. § 404.1527(d)(2); Magallanes, 881 F.2d at 751.

   In this case, Dr. Spangler and Dr. Imperial's opinions described Garcia as functioning at a level consistent with disability while Dr. Hotti and Dr. VanCompernolle's opinions did not.  AR 23-25, 436-47, 549-86.  An opinion is considered to be inconsistent with the other substantial evidence, when, *inter alia*, "two medical sources provide inconsistent medical opinions about the same issue."  Social Security Ruling ("SSR") 96-2P (S.S.A July 2, 1996), 1996 WL 374188, at *3.  The ALJ appropriately declined to accord the treating physician's opinion "controlling weight."

   However, this "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected."  96-2P ,1996 WL 374188, at *4.  "Treating source medical

1    opinions are still entitled to deference and must be weighed using all of the factors provided in 20
2    C.F.R. § 404.1527." Id.  Even if the opinion of a treating physician is not controlling, the opinion
3    should generally be favored over that of a non-treating physician. Lester, 81 F.3d at 830–31.  If a
4    treating physician's opinion is uncontradicted, an ALJ must give "clear and convincing" reasons
5    that are supported by substantial evidence to reject the opinion. Lester, 81 F.3d at 830–31.[1]
6    Where, as here, the treating physician's opinion is contradicted, the standard is lower, but an ALJ
7    still must give "specific and legitimate reasons that are supported by substantial evidence in the
8    record" to reject the opinion. Id.

9    The ALJ rejected Dr. Wolfe's opinion because it was based solely on subjective
10   complaints from Garcia.[2]  The ALJ did not reject the opinion of Dr. Spangler and Dr. Imperial, but
11   their opinions were given little weight because they were "not supported by objective evidence or
12   the providers' own treatment notes."  AR 25.  Dr. Hotti's opinion was given some weight, but the
13   ALJ found Garcia was actually somewhat more limited than Dr. Hotti had opined.  Finally, the
14   ALJ found Dr. VanCompernolle's opinion deserved the most probative weight because it was
15   "well supported and consistent with the record as a whole."  AR 25.

16   The ALJ found that Dr. Spangler and Dr. Imperial's opinions deserved little weight
17   because they were "not supported by objective evidence or the providers own treatment notes."
18   AR 25.  Discrepancy between a doctor's treatment notes and conclusions is a legitimate reason for
19   discounting a doctor's opinion. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).
20   Although the ALJ did not indicate the exact discrepancy between the doctors' notes and
21   conclusions, both of the doctors' conclusions relied on Garcia's claims regarding the intensity,
22   persistence, and limiting effects of her symptoms, claims which the ALJ found were not credible.[3]

---

[1] Defendant argues, ECF No. 22, at 5:12, n.3, that this Court should ignore this aspect of Lester v. Chater.  The Court will apply Ninth Circuit precedent.

[2] Plaintiff's motion does not dispute (or even discuss) the ALJ's rejection of Dr. Wolfe's assessment. See Plaintiff's Motion, at 3:9-6:17.

[3] The ALJ also found that Garcia herself was not entirely credible.  Garcia does not argue the ALJ's findings against her credibility were incorrect.  Instead, Garcia mentions this issue in only three lines in one of her two briefs, saying: "There is also little support for the ALJ's finding against plaintiff's credibility. The ALJ's rationale actually involves the ALJ listing several severe medical

1   When a claimant's description of her limitations is not entirely credible, it is reasonable to

2   discount an opinion that was based on those less than credible statements. Bray v. Comm'r of

3   Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).  The ALJ evaluated the evidence in a

4   permissible manner and gave specific and legitimate reasons for discrediting the opinions of Drs.

5   Spangler and Imperial.

6         The ALJ also properly relied on the findings of Dr. VanCompernolle.  The findings of

7   nontreating, nonexamining physicians can be substantial evidence if other evidence in the record

8   supports the findings.  Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (citing Andrews v.

9   Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); see also Magallanes, 881 F.2d at 752).  Dr.

10  VanCompernolle's opinion was based on medical evidence and on the opinions of other

11  examining physicians, which in turn were based on clinical findings from Garcia's treatment

12  following the motor vehicle accident in 2006.  Furthermore, substantial evidence in the record

13  supports Dr. VanCompernolle's opinion.  For example, the month after accident, Garcia said she

14  had no pain and her doctors planned to take her off of her pain medications.  AR 260, 268.  In the

15  following months, Garcia repeatedly reported that she had no pain.  AR 262-66.  In January 2007,

16  x-rays of her spine produced a normal exam with no worrisome findings.  AR 296.  In March

17  2007, an electroencephalogram ("EEG") returned normal results.  In May 2007 another EEG and a

18  magnetic resonance image ("MRI") were "entirely normal."  AR 288, 299.  One doctor at the

19  Stanford clinic where Garcia received extended care following the accident summarized Garcia's

20  treatment as an "extensive workup" which "failed to document any injury."  AR 274.  Then, from

21  2008 until 2009, Garcia's medical record was silent.  AR 466-67.

22        The issue is not whether there is some evidence to support Plaintiff's position, but whether

23  there was substantial evidence to support the ALJ's finding.  If there is substantial evidence to

24  support the finding, this Court cannot substitute its own determination of the evidence.  Key v.

25  Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985).  Where more than one rational interpretation exists

---

27  conditions. It does not, however, identify the specific allegations that the ALJ finds to not be credible."
    ECF No. 19-1, at 15:1-3.  Garcia does not list this as one of the five grounds for finding the ALJ's
28  determinations to be error.

1  based on the evidence, the court must defer to the ALJ's finding.  See Moncada, 60 F.3d at 523;

2  Drouin, 966 F.2d at 1258.  Here, the ALJ evaluated the evidence regarding Garcia's condition and

3  was presented with conflicting medical opinions.  The ALJ gave specific and legitimate reasons

4  for giving the opinions of Drs. Spangler and Imperial little weight, and weighted Dr.

5  VanCompernolle's opinion in accordance with the law.  Substantial evidence supports these

6  findings.

         **B.**     **Whether The ALJ's Analysis of the Mental Health Limitations Was Supported by Substantial Evidence**

9  Plaintiff alleges the ALJ erred at step two by not finding Garcia's depression to be a severe

10 impairment.  Plaintiff argues that her depression should have been found severe because the

11 diagnosis is noted throughout the record and because the fact she declined mental health services

12 does not prove that she was not suffering from mental illness.  Defendant asserts that a diagnosis

13 of depression alone does not provide any detail about severity, and argues that the ALJ reasonably

14 found that Garcia had only mild psychiatric limitations rather than a severe mental impairment.

15 "The mere diagnosis of an impairment listed in 20 C.F.R. Appendix 1, Subpart P, § 4.12 is

16 not sufficient to sustain a finding of disability." Young v. Sullivan, 911 F.2d 180, 183 (9th Cir.

17 1990).  "While the Listing of Impairments does describe conditions that are generally considered

18 severe enough to prevent a person from doing any gainful activity, an ALJ should not consider a

19 claimant's 'impairment to be one listed in Appendix 1 solely because it has the diagnosis of a

20 listed impairment.'" Id. at 183-84 (citing 20 C.F.R. § 404.1525(d)).  "'It must also have the

21 findings shown in the Listing of that impairment.'" Id. at 184.

22 Although the ALJ found Garcia was diagnosed with depression, he found she had only

23 mild, non-severe psychiatric limitations rather than a severe impairment.  The ALJ evaluated

24 Garcia's mental impairment using section 12.00C of the Listings of Impairments Review

25 Technique.  Under this technique, to determine whether a claimant with a mental impairment

26 meets a severe listed impairment, the ALJ considers: (1) whether specified diagnostic criteria are

27 met and (2) whether specified functional restrictions are present.  20 C.F.R. § 404.1520(a).  The

28 mental impairment must satisfy both criteria to meet the listings.  The specified functional

restrictions are: (1) marked restriction in activities in daily living; (2) marked difficulties in social functioning; (3) deficiencies in in maintaining concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner; and (4) repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.B.

If the ALJ found Garcia satisfied the listing for "Affective disorders" and found that her condition resulted in two or more severe functional limitations, Garcia would have been found disabled.  Lester, 81 F.3d at 828.   However, the ALJ instead found Garcia had mild restrictions of activities of daily living, no difficulties in social functioning; mild limitations in maintaining concentration, persistence or pace, and no episodes of decompensation for an extended duration.  In addition, the ALJ generally found Garcia's subjective claims regarding the intensity, persistence, and limiting effects of her symptoms to be not entirely credible.  Therefore, the ALJ did not find Garcia's depression was a severe impairment or that Garcia was disabled.

The ALJ's decision stated that Garcia's act of declining mental health treatment was "not consistent with one suffering from a severe mental health impairment." AR 22.  Failure to seek treatment is not an acceptable reason to conclude that a claimant's mental impairment is not severe.  Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996).  It was incorrect for the ALJ to rely on Garcia's treatment history in this manner in evaluating her psychiatric limitations.  Id.  This Court is compelled to find that the error is harmless, however, because the substantial evidence relied on in the Listings of Impairments review supports the ALJ's ultimate determination that Garcia does not suffer from a severe mental impairment.  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006).

Following her hearing with the ALJ, Garcia obtained additional mental health records.  She submitted these records to the Appeals Council who considered them in their decision to deny her appeal.  AR 587-643.  "When a claimant submits evidence for the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which this court must consider in determining whether the ALJ's decision is

1   supported by substantial evidence." Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157,
2   1159-60 (9th Cir. 2012).   Plaintiff argues that these records show her depression was severe.
3   However, the relevant inquiry at this stage is not whether there is some evidence to support
4   plaintiff's position, but whether there was substantial evidence to support the finding made by the
5   ALJ.  As stated above, where more than one rational interpretation exists based on the evidence,
6   the court must defer to the ALJ's finding.  See Moncada, 60 F.3d at 523; Drouin, 966 F.2d at
7   1258.  The court cannot substitute its own determination of what the evidence shows if there is
8   sufficient evidence to support the ALJ's determination.  Key, 754 F.2d at 1549.

9   The additional records support the existence of Garcia's depression diagnosis but do not
10  show that the Appeals Council lacked substantial evidentiary support in denying review of the
11  ALJ's finding that Garcia had only mild psychiatric limitations.  For example, many of the
12  additional records indicate that Garcia had been diagnosed with depression but give no detail on
13  the severity of her symptoms.  AR 595, 608.  Other records specify that her diagnosis is "mild
14  recurrent major depression," and that her assessment is "moderate."  AR 603-04.  Therefore, the
15  Court defers to the ALJ's and the Appeals Council's determination that Garcia had mild rather
16  than severe psychiatric limitations, because the finding is supported by substantial evidence.

17  **C.    Whether The ALJ's Step Four Determination Was Based on Legal Error**

18  Plaintiff argues that the ALJ's step four finding that Garcia was able to perform her past
19  relevant work was based on legal error.  Plaintiff argues that the determination was based on VE
20  testimony that improperly assumed that adjustable desks were available at Plaintiff's past jobs.
21  Defendant argues that Garcia's description of her past relevant jobs supports the finding that she
22  was able to perform such work.  Defendant also argues it was Plaintiff's burden to prove that she
23  was unable to perform her past relevant work.

24  The claimant bears the burden of proving that she is disabled.  Meanel v. Apfel, 172 F.3d
25  1111, 1113 (9th Cir. 1999) (citing Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir.1995)).  In
26  particular, the plaintiff must prove that her impairments prevent her from performing her past
27  work.  Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996).  In making this determination, the ALJ is
28  entitled to rely on a plaintiff's own description of her job duties.  See Matthews v. Shalala, 10 F.3d

1   678, 681 (9th Cir. 1993). However, in making this determination, the ALJ "does *not* take the

2   possibility of "reasonable accommodation" into account." Cleveland v. Policy Mgmt. Sys. Corp.,

3   526 U.S. 795, 803(1999) (emphasis in the original)..

4   The ALJ made his step four determination by comparing Garcia's RFC to the demands of

5   her past relevant work. The ALJ found that Garcia's RFC allowed her to perform light work as

6   defined in 20 C.F.R. § 404.1567(d), 416.967(b) so long as she was afforded the opportunity to

7   alternate between sitting and standing as needed. Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567. Furthermore, in determining Garcia's RFC, the ALJ gave probative weight to Dr. VanCompernolle's opinion that Garcia was capable of standing or walking for two hours in an eight hour workday and sitting for a total of about six hours in an eight hour workday.

The ALJ compared Garcia's RFC to her past relevant work. In making this determination, the ALJ was entitled to rely on Garcia's descriptions of her past relevant work duties. See Matthews, 10 F.3d at 681. Garcia described her past jobs as credit analyst, accounting manager, and credit manager. AR 210-14. Each of these jobs involved a certain amount of time sitting or standing throughout the day. None of these jobs required more than seven hours sitting, more than two hours standing, or more than two hours total of walking and standing combined. Id. According to Garcia's account of her past jobs, she would be able to sit and stand at her past jobs regardless of whether she was accommodated with an adjustable desk. Id.. Under SSR 83-12:1, Garcia's past relevant jobs are the type that would accommodate alternate sitting and standing as needed:

> There are some jobs in the national economy -- typically professional and managerial ones -- in which a person can sit or

11

> stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled.

Furthermore, the VE testified that Garcia's past relevant jobs should be categorized as sedentary jobs. Sedentary jobs entail:

> [L]ifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567.

The step four finding repeatedly references the VE's testimony. After testifying to the fact that Garcia's past work was sedentary, the VE responded to hypothetical questions from the ALJ concerning an individual who could lift twenty pounds and complete an eight hour workday if given the option to alternate to between sitting and standing as needed. AR 56-57. The VE testified that such an individual would not be able to perform Garcia's past relevant work. Id. The ALJ then modified the hypothetical, "out of curiosity," to assume the individual had access to an adjustable desk which would allow her to work while either sitting or standing. AR 58. The VE testified that access to an adjustable desk would allow the individual to perform Garcia's past relevant work. Id.. Later in the hearing, the ALJ later referred to an adjustable desk as a "reasonable accommodation." AR 59.

In her reply, Plaintiff argues the ALJ's presumption of a reasonable accommodation was error, and that any determination by the ALJ which was based on VE testimony which assumed the availability of adjustable desks was likewise error. Plaintiff is correct in part; the ALJ's step four determination cannot take into account the possibility of a reasonable accommodation. Cleveland, 526 U.S. at 803. Plaintiff also correctly notes that no evidence shows that she had access to adjustable desks at her past relevant work.[4] The ALJ erred if he assumed that Garcia

---

[4] Defendant argues that Plaintiff improperly relies on the Social Security Administration's Programs Operational Manual System ("POMS") § DI 25005.020(E) in arguing that an ALJ may take accommodations into account only if such accommodations were actually provided by a plaintiff's prior employers. Defendant argues that "POMS constitutes an agency interpretation that does not impose judicially enforceable duties on either this court or the ALJ." Lockwood v.

12

would be accommodated with an adjustable desk.

The error was harmless, however, because substantial evidence supports the ALJ's finding that Garcia's impairments did not prevent her from performing her past work. Garcia had the RFC to perform light work so long as she could alternate between sitting and standing as needed. She was capable of standing or walking for two hours and sitting for about six hours during an eight hour workday. Her past work was sedentary work. None of her past work required more than seven hours sitting, more than two hours standing, or more than two hours total of walking and standing combined. Furthermore, Garcia's past work was the kind which typically allows for an individual to sit or stand with a degree of choice. Therefore, substantial evidence shows Garcia would be able to sit and stand as needed in her previous relevant jobs, regardless of whether she was accommodated with an adjustable desk.

Typically, if an individual can do light work, they can also do sedentary work. Garcia's RFC was limited by her need to alternate between sitting and standing. However, substantial evidence supports the ALJ's finding that Garcia's past relevant work would accommodate this need. This finding does not rely on any assumption about the availability of an adjustable desk.

The harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. Curry, 925 F.2d at 1131. Regardless of VE testimony which assumed an adjustable desk, substantial evidence supports the ALJ's finding that Garcia's past jobs would allow her to sit and stand in accordance with the limitations identified in the RFC. Despite the ALJ's error in considering adjustable desks, substantial evidence otherwise supports his finding that Garcia could perform her past relevant work.

### D. Whether The ALJ's Alternative Step Five Determination Was Legally Insufficient

Plaintiff asserts that the hypothetical question posed by the ALJ to the VE did not reflect Garcia's limitations. Because of this error, Plaintiff argues that the VE's testimony had no

---

Comm'r of Soc. Sec., 616 F.3d 1068, 1073 (9th Cir. 2010). Defendant is correct that "POMS does not have the force of law, but it is persuasive authority." Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006). Therefore, POMS is considered as such.

evidentiary value in supporting the finding Garcia could perform the parking lot attendant, bench production, and assembler jobs which were available in the national economy.  Defendant argues ALJ properly relied on the VE testimony because the hypothetical included Garcia's limitations.

At step five, the ALJ must "identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite her identified limitations."  Johnson, 60 F.3d at 1432.  The burden is on the ALJ to establish that the claimant can engage in other substantial gainful activity.  Gamer v. Sec'y of Health & Human Servs., 815 F.2d 1275, 1279-80 (9th Cir. 1987).  The ALJ may use VE testimony to do this.  The VE may testify as to what jobs the claimant, given her RFC, would be able to do, and may testify to the availability of such jobs in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).  A VE's recognized expertise provides the necessary foundation for their testimony, and an ALJ may take administrative notice of any reliable job information provided by a VE.  Bayliss, 427 F.3d at 1217-18.

At a hearing, the ALJ poses hypothetical questions to the VE that "set out all of the claimant's impairments" for the VE's consideration.  Tackett, 180 F.3d at 1101 (citing Gamer, 815 F.2d at 1279).  "The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record."  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006).  However, the ALJ need only to include impairments supported by substantial evidence.  Id.  If the record does not support the assumptions in the hypothetical, the VE's testimony has no evidentiary value.  Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001) (citing Gamer, 815 F.2d at 1279).  Here, the ALJ set out Garcia's impairments for the VE's consideration as follows: "an individual who's [sic] able to lift 20 pounds and can complete an eight hour work day if given the option to alternate between sitting and standing as needed."  AR 56.  This depiction contained limitations that the ALJ found credible and supported by substantial evidence.[5]  Despite the later

---

[5] Plaintiff argues that the VE's testimony lacked evidentiary value because the ALJ failed to properly weigh the medical opinions and failed to properly consider the severity of Garcia's depression.  Plaintiff also argues that these failures resulted in the ALJ overstating Garcia's ability to be productive while working.  However, as detailed above, the ALJ's analysis of the medical opinions and Garcia's depression was supported by substantial evidence and therefore the hypothetical limitations presented to the VE were not improper.

14

discussion of adjustable desks, this hypothetical was an acceptable basis for VE testimony and the ALJ's reliance the testimony was appropriate.

In her reply, Plaintiff asserts that the VE testified that Garcia's need to alternate between sitting and standing would limit her ability to perform certain types of parking lot attendant jobs. Plaintiff argues that the VE did not provide statistics that reflected this limitation and therefore the ALJ failed to meet the burden of showing the job existed in significant numbers in the economy.

The ALJ had to burden of establishing which jobs were available in the national economy that Garcia would be able to perform. Tackett, 180 F.3d at 1101. The VE testimony was limited to certain types of parking lot attendant jobs, but the VE provided job availability statistics for all types of parking lot attendant jobs. Therefore, the VE failed to provide reliable information about the availability of the pertinent types of parking lot attendant jobs. The ALJ failed to meet the burden of establishing that these parking lot attendant jobs existed in significant numbers in the economy.

Although the ALJ failed to meet his burden for the parking lot attendant job, the VE also identified bench production and assembler positions as other jobs which Garcia could perform and which existed in substantial numbers in the national economy. This finding was not made in error. Therefore, substantial evidence supports the ALJ's finding that Garcia would be able to perform other jobs which existed in substantial numbers in the national economy. Here, while the ALJ erred in including the parking lot attendant job in the step five finding, the error was harmless because substantial evidence otherwise supports the ALJ's step five finding.[6] Curry, 925 F.2d at 1131.

### E.     Third–Party Testimony

Plaintiff asserts that the ALJ committed harmful error in finding that the lay testimony of

---

[6] If the ALJ's step five analysis were entirely in error, the error would be harmless. At step four, once the ALJ determined that Garcia was not disabled, the analysis did not have to continue. 20 C.F.R. § 416.920 (explaining "[i]f [the Social Security Administration] can find that [claimants] are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."). If an error occurs during a procedure or a step the ALJ was not required to perform, the error is harmless. Stout, 454 F.3d at 1055; see also Matthews, 10 F.3d at 681; Booz v. Sec'y of Health & Human Servs., 734 F.2d 1378, 1379–80 (9th Cir. 1984).

Garcia's friend Charles Fox had little probative weight. Plaintiff argues that this finding was in error because it was based on the fact that Fox was a third party not involved in her medical care. Plaintiff also argues that the ALJ's rationale conflicts with the Social Security Administration's policy of requesting third party statements, and contradicts the rules for considering such statements. Defendant argues that the third party witness testimony was reasonably considered and was rejected for germane reasons.

The Ninth Circuit recently described the governing standards for lay witness testimony:

> Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir.1996); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir.1993). We have held that competent lay witness testimony "*cannot* be disregarded without comment," Nguyen, 100 F.3d at 1467, and that in order to discount competent lay witness testimony, the ALJ "must give reasons that are germane to each witness," Dodrill, 12 F.3d at 919. We have not, however, required the ALJ to discuss every witness's testimony on a individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness. See Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir.2009) (holding that because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony").

Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (alterations made to provide full citation to Valentine). Here, as in Molina, and unlike in Valentine, the ALJ did not specifically "point to" his reasons for rejecting Garcia's testimony as reason for rejecting Fox's testimony.[7] The ALJ said only that the testimony deserved little weight because Fox was "not involved in the claimant's health care" and because his testimony was "simply the type of statement expected to support one's claim for disability benefits." AR 25. This analysis mistakes the purpose of lay testimony

---

[7] In Valentine, the ALJ satisfied the standard by stating that she "rejected [the lay] . . . evidence based, at least in part, on 'the same reasons [she] discounted [Valentine's] allegations.'" 574 F.3d at 694 (alterations in the original). In Molina, "the ALJ stated that the rationale for her credibility determination 'include[d] reference to . . . the third party statements submitted in support of the claimant,'" but the Ninth Circuit held that such a reference was insufficient to "provide a reason for discounting the testimony." 674 F.3d at 1114.  Here, the ALJ in this case did not even reference his reasons for rejecting Garcia's testimony in rejecting Fox's testimony.

16

and is not an appropriate ground for discrediting the testimony. The purpose of lay testimony is not to provide insight from only those people involved in the claimant's health care. Bayliss, 427 F.3d at 1218 (citing Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999)). Lay testimony is valuable because it is predicated upon lay observations. Doddrill, 12 F.3d at 919. The testimony is submitted to provide insight from individuals who have close contact and personal knowledge of the claimant's impairments and cannot be dismissed simply because it may support a plaintiff's claims. SSR 06-3p. The ALJ erred in failing to provide germane reasons for discounting Fox's opinion.

However, this error is subject to harmless error analysis. Molina, 674 F.3d at 1115-22. "[I]f an ALJ has provided well-supported grounds for rejecting testimony regarding specified limitations, we cannot ignore the ALJ's reasoning and reverse the agency merely because the ALJ did not expressly discredit each witness who described the same limitations." Id. at 1121. "Further, where the ALJ rejects a witness's testimony without providing germane reasons, but has already provided germane reasons for rejecting similar testimony, we cannot reverse the agency merely because the ALJ did not 'clearly link his determination to those reasons.'" Id. (quoting Lewis, 236 F.3d at 512). Instead, the court "must consider whether the ALJ's failure to discuss the testimony . . . was 'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." Molina, 674 F.3d at 1122.

Here, the ALJ evaluated Garcia's claims regarding the intensity, persistence, and limiting effects of her symptoms, and found that they were not credible in light of the objective medical evidence. AR 22-24. Garcia does not demonstrate that this finding was unsupported by substantial evidence.[8] Like the lay testimony at issue in Molina, Fox's testimony "did not describe any limitations beyond those [the claimant] herself described." 674 F.3d at 1122. It describes, *inter alia*, the same fainting spells, limitations of movement, and pain, that Garcia herself claimed to be experiencing. AR 23-24, 198-224.[9] Because Fox's testimony did not present new evidence

---

[8] See footnote 3, *supra*.

[9] The testimony does appear to contain Fox's independent observation of Garcia's behavior. In contrast with the dissenting opinion, the majority opinion in Molina appeared to conclude that, when a lay witness testifies only to observing the same limitations that the claimant claims to be

1  and was substantially similar to Garcia's own validly discredited claims, the ALJ's error in failing

2  to identify his reasons for rejecting the lay testimony was harmless, since it was inconsequential to

3  the ultimate nondisability determination.  See id.; cf. Valentine, 574 F.3d at 694.  The ALJ

4  analyzed all of the limitations described in the lay testimony and substantial evidence otherwise

5  supported the ALJ's decision.  Curry, 925 F.2d at 1131.

## IV.    CONCLUSION

For the foregoing reasons, the court finds no reason not to affirm the ALJ's primary finding that Plaintiff is not disabled.  The court also finds: (1) the ALJ did not fail to grant appropriate weight to treating source opinions, (2) the ALJ did not err in finding Plaintiff's depression to not be a severe impairment, (3) the ALJ's determination that Plaintiff could perform her past relevant work was not based on legal error, (4) the ALJ's alternative step five finding is not legally insufficient, and (5) the ALJ did not err in evaluating third party testimony.  Accordingly, Plaintiff's motion for summary judgment is DENIED and Defendant's motion for summary judgment is GRANTED.

**IT IS SO ORDERED**.

Dated: October 3, 2013

_____
JON S. TIGAR
United States District Judge

---

subjectively experiencing, that independent observation is not new evidence that must be fully credited in a harmless error analysis.  Compare Molina, 674 F.3d at 1123 (Graber, J., concurring in part and dissenting in part) (arguing that "independent observations of [the claimant's] behavior" which "does more than echo her own complaints" contains new details which must be fully credited in a harmless error analysis, compelling remand) with 674. F.3d at 1122, n. 14 (majority op.) (noting, "contrary to the dissent," that the third-party testimony, including the witnesses' descriptions of the claimant's symptoms, merely "described the same limitations as [the claimant] described") . This appears to be consistent with other non-precedential authority this Court has identified.  See, e.g., Zerba v. Comm'r of Soc. Sec. Admin., 279 F. App'x 438, 440 (9th Cir. 2008); Gutierrez v. Astrue, Case No. 12-1390 MEJ, 2013 WL 2468344, at *21 (N.D. Cal. June 7, 2013).